# SUPREME JUDICIAL COURT

###### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1836, AT WORCESTER.

———

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,

---

## EMORY SCOTT *versus* JOSEPH RAY *et al.* and Trustees.

One summoned under the trustee process, disclosed in his answers, that the principal defendant made a general assignment of his property to the respondent in trust to pay creditors who should become parties to the assignment, and that the assignment was executed by the defendant, the respondent, and a few preferred creditors ; that afterwards these creditors, together with some others, including the plaintiff, who had attached the property in the respondent's hands, gave the defendant a letter of license, containing a stipulation that the creditors would accept the principal of their demands in full satisfaction, on condition that it should be paid in ten equal semi-annual instalments, and a further stipulation, that the creditors who had attached the property in the respondent's hands should be at liberty to continue their actions in court until default should be made in the payment of the instalments ; that it was then expected and represented by the defendant, that by having the use of certain machinery and tools embraced in the assignment, he would be able to pay all his creditors ; that under this expectation the respondent permitted the defendant to possess and use such machinery and tools, not however relinquishing the respondent's right to sell the same, should it become necessary ; that the defendant, after paying half of the instalments, became unable to pay the rest,

and thereupon the respondent proceeded to sell the property for the paymen. of the debts ; that none of the creditors, prior to the failure to pay the instalments, had requested the respondent to hasten the sale, and he believed that they acquiesced in the postponement of it ; and that he sold some of the property to one W. on a credit, taking therefor his negotiable note, payable to a bank and signed by the respondent himself as surety and discounted by the bank. It was *held*, that the respondent should account for the price of the property sold to W., the note taken being *primâ facie* a payment, and this presumption not being rebutted by the fact that the note was signed by the respondent as surety.

*Held* also, that under the circumstances above stated, the permission given to the defendant to possess and use the machinery and tools, was not sufficient to prove the assignment fraudulent and void.

*Held* also, that the respondent was not to be charged with rent, hire or use of the machinery and tools, it being no part of the trust that he should let or use the same for profit, and he having received nothing by way of rent or use, and there being, by reason of the license, to which the plaintiff was a party, no negligence on the part of the respondent, in delaying to sell the property.

*Held* also, that in stating the demands which were to be allowed as a charge on the funds, the respondent should be permitted to cast interest on his own demand and those of other creditors, parties to the assignment, up to the time of selling the property and realizing the proceeds.

The respondent having a demand due to him personally, and another due to him as assignee, against the same person, and having obtained satisfaction of the first demand, it was *held*, that he should apply the satisfaction received, to both demands, *pari passu*, it being his duty to take as good care of the trust property as of his own.

The respondent having answered that he had funds in his hands, and that he had paid a co-assignee a certain sum for his services, and that he thought this sum had not been repaid him by the defendant, he was *held* to be chargeable for such sum, the burden being upon him to show that it had not been refunded.

CALEB COLVIN, one of the supposed trustees, states in an original and a supplementary answer, among other things, that on the 25th of July, 1829, Paine & Ray, the principal defendants, by an indenture, (which is made a part of the answers,) conveyed to the respondent and to Caleb Cook, two factories, a store, certain machinery, tools, and other personal property, in trust to pay the creditors of Paine & Ray, who should become parties to the assignment ; that at the time of the service of this trustee process, the assignment was executed by Paine, Ray, Cook, the respondent, (who was a preferred creditor, as well as an assignee,) and two other preferred creditors ; that the proceeds of the property assigned, (as stated in an account of sales,) with interest to January 1, 1835, amounted to $ 6,874·04 ; and that the notes paid, or to be paid, out of the same proceeds, with interest to the same day, viz. (among others) two notes to the Mendon bank for $ 1,200 and

$750, made by Paine & Ray, as principals, and the respondent, as surety, and two notes made by Paine & Ray to the respondent for $ 1,300 and $ 600, together with the expenses of executing the assignment, (as stated in an account,) amounted to $ 8,163·71, (three items being for the expense of finishing a double speeder, according to directions in the assignment, $ 365·69, amount paid C. Cook for services as assignee, $ 34·37, and expenses and services of the respondent, as assignee, $ 398·87 ;) that the proceeds of the sales had come into the respondent's hands, or been secured to him, except the price of ten looms, &c. sold to Abel Wilder for $ 600, on December 10th, 1833, on a credit of six months ; that Wilder was solvent at the time of the sale and became insolvent within the six months, and has not paid the above sum, and it is not carried into the footing of the account of sales ; that the respondent and his partner sued Wilder in March, 1834, and recovered judgment for $ 3,010·35 debt, and at the same time the respondent alone brought an action against him for the money due on his note for $ 600, and another note, for $ 42·97, made by him to the respondent in the respondent's private capacity, and recovered judgment for $ 663·47 debt ; that the same property of Wilder was attached in each action, the first attachment being in the first named action and the property being enough to satisfy the judgment in that action, and $ 48·43 on the other judgment, exclusive of officer's fees ; and that the respondent delivered the two original writs to the officer at the same time, and directed him to secure the demands, without giving directions which writ should be served first ; that by an arrangement between the respondent and Cook, the trusts of the assignment have been principally executed by the respon dent, and he has paid Cook for his services, as mentioned in the account, and he thinks the amount so paid has not been repaid him by Paine & Ray, but he is not positive of that fact ; that he has caused all the notes mentioned in the account, to be paid, excepting the two notes for $ 1,200 and $ 750 made to the Mendon bank, and the two notes for $ 1,300 and $ 600, made by Paine & Ray to the respondent ; that he has caused a part of the notes to the bank to be paid, and has undertaken to pay the residue as soon as he shall have collected the proceeds of

the sales above mentioned ; that the tools in the machine shop have been in use about all the time since they were assigned, and the machinery all the time except about a year, until they were sold ; that they had not been leased by the respondent, but Paine & Ray used them or leased them until they were sold ; that the respondent and his partner hired the store, of Paine & Ray, after the assignment ; that in the autumn of 1829, Paine & Ray made an arrangement with most of their creditors, by which they obtained a letter of license, (which was made a part of the answers,) for five years and two months, on condition that Paine & Ray should pay ten per cent on the principal sums due from them, once in six months, and upon such payment of the principal sums the creditors were to give a discharge of their claims ; and there was a further stipulation, that those creditors who had obtained any security by attachments should not be bound to relinquish them, but should be at liberty to continue their actions in court until default should be made in the payment of the semi-annual instalments ; that to this arrangement the plaintiff and other creditors who had cited the respondent as trustee of Paine & Ray, and some of the creditors mentioned in the deed of assignment, became parties ; that it was then expected and represented by Paine & Ray, that by running their machinery and carrying on their business as they had done before their failure, they would be able to pay off all their creditors ; that under this expectation the respondent permitted them to run the machinery, not relinquishing his right to sell it if it should be necessary, and that he never received any rent for the use of the machinery or tools, and it was not understood, either by them or the respondent, that they were to pay for such use ; that they paid most of the creditors who became parties to the letter of license, fifty per cent, and some of them sixty per cent, according to the conditions of the letter of license, and in the autumn of 1833, they became unable to pay the residue of the instalments, after which the respondent proceeded to sell the assigned property, from time to time, as opportunity occurred ; that no one of the creditors who have actions pending, or of those who were parties to the assignment, requested the respondent to hasten the sale of the property, prior to the failure of Paine & Ray to pay the instal-

Scott
v.
Ray
and Trs.

ments, and he then believed, and now believes, that they acquiesced in the postponement of the sale ; that the respondent's impression was, that he charged Paine & Ray $100 for his services, and that this sum was included in a settlement with them in 1832, but whether any part of that charge was for services and expenses as assignee, he does not recollect, that the expense of finishing the double speeder, as stated in the account, amounting to $365·99, was, without the interest, $338·26, of which Paine & Ray paid $257·77, the residue being paid out of the proceeds of the assigned property, viz. $36·60 out of the proceeds of a turning engine, credited in the account of sales, and $43·89 out of the proceeds of some iron, &c. sold and not accounted for in the account of sales ; that the notes to the Mendon bank were presented to the commissioners of insolvency on the estate of Paine, who has deceased, and a dividend of about eight cents on the dollar has been decreed on the notes, which has not yet been paid nor demanded, and that a dividend has been allowed by the commissioners, and decreed, on the two notes made to the respondent.

*Oct. 5th, 1835.*

*S. Allen*, for the plaintiff.

*W. S. Hastings*, for the trustee.

*Oct. 10th, 1836.*

SHAW C. J. delivered the opinion of the Court. From the very voluminous examination of Colvin, the trustee, and the extensive detail of facts and particulars disclosed in his answer, it is difficult to come to a satisfactory result ; and it would be indeed quite impossible to settle the account of the trustee and state a balance, without a more careful examination of the facts, and a more exact computation of the interest and other particulars of the account. But this we think is not necessary for the purposes of the present inquiry, the object being only to ascertain whether the trustee is liable for any thing, and not to state the balance and determine the precise sum for which he is liable.

The general facts disclosed in the answer are, that Paine & Ray, the principal defendants, in July 1829, made an assignment of certain machinery and other property to Caleb Colvin, the trustee who answers, and to Caleb Cook, which assignment is referred to and made the basis of the answer

By the terms of the assignment, the assignees were to be responsible for the sums by them respectively received, and not each for the other ; and as it appears by the answer of Colvin, that he was the sole acting assignee, and has received all the money that has been received as the proceeds of the trust property, it may be considered as if the assignment had been to him alone, for all the purposes of this inquiry.

It appears, that the assignment was executed by none but certain preferred creditors particularly named. It further appears, by the explanatory answer of the trustee, to which there is no objection, that after the execution of the assignment, and after the service of the trustee process in this case, which was made in 1829, many of the creditors of Paine and Ray, among whom was the plaintiff, entered into an agreement of composition, accompanied with a letter of license, by which they stipulated to give the debtors a license for five years and two months, on condition to pay the original amount of their debts, without interest or costs, in ten semi-annual instalments of ten per cent each, and on such payment said creditors to receipt the same in full satisfaction and discharge of their claims. But it was further stipulated, that those of said creditors who had obtained any security by attachments, should not be bound to relinquish them, but should be at liberty to continue their actions in court, without prosecution, until default should be made in the semi-annual instalments stipulated to be paid. This letter of license and deed of composition is submitted and made part of the answer. It appears, that the instalments were paid for some time, and to the amount of fifty per cent of the debts, and then the debtors became unable to pay, one of them having died. Pursuant to the stipulation in this agreement, this action was continued in court, from time to time, till 1834 or 1835, when the trustee was called upon to answer, and the further proceedings have been had. The trustee states, that until the failure to pay the instalments, he was not called upon by any person interested, to sell the trust property, or to take any steps to carry the purposes of the assignment into effect.

The trustee has now submitted his answer, upon which several questions arise for the consideration of the Court and have been fully argued.

Scott
v.
Ray
and Trs.

The Court are of opinion, that in stating the account of unds with which the trustee ought to be charged, the value of the machinery sold to Wilder ought to be included, on several grounds. It does not distinctly appear, that the trustees were authorized to sell on credit; but further, the note given by Wilder, made payable to the bank and discounted there, was *primâ facie* evidence of a payment, and the fact that Colvin, the trustee, became surety upon the note, does not rebut this presumption. Again, a trustee is bound to take as good care, at least, of the trust property as of his own, and, therefore, when the trustee, having demands of his own and those of his trust, at the same time, against Wilder, obtained satisfaction in part, then as between him and the parties interested in the trust fund, he ought to consider them satisfied *pari passu*, and this would render him liable for about five sixths of the debt. But for the reason first above given, that the note was a payment, we think he must be chargeable with the whole amount, with interest from the time of the sale.

The Court are also of opinion, that there is not enough on the trustee's answers, to warrant the Court in declaring the assignment fraudulent and void, especially as the possession and interference of the assignors, from which, in great part, such an inference must be drawn, if drawn at all, are accounted for by the letter of license, and the implied permission arising from it, to which the plaintiff assented, that such permission and interference should be allowed, and were intended to oe authorized.

On the next point, we think there are no sufficient facts appearing in the answers of Colvin, to warrant the Court in finding, that the notes claimed by him to be paid out of the trust fund were without consideration or fraudulent, or otherwise void.

The Court are further of opinion, that in stating this account for the purpose of determining whether the trustees are chargeable or not, they are not to be charged with the rent, hire or use of the machinery, or other trust property, because 1. it was no part of the trust to let out or use the property for profit, and they state explicitly, that they received nothing by way of rent or use of it; and 2. they are not liable on the

ground of delay and negligence in selling the trust property and converting the same into money and paying the debts, because by the letter of license, to which the plaintiff was a party, made soon after the attachment, and with manifest reference to the trustee attachments then pending, it was stipulated by the plaintiff, that he would not proceed in his attachment, for the term of five years, unless default should be made in the payment of the semi-annual instalments, then stipulated to be made, by which, if made agreeably to such stipulation, the debts would be fully paid and the attachments discharged. This was an express agreement on the part of the plaintiff, to allow delay and forbearance in his attachment, and by necessary implication, to allow a reasonable forbearance to the trustees, in settling and closing the trust, and permitting to the assignors the qualified use of the property as a means of continuing their business.

In stating the demands which are to be allowed as a charge on the funds, the trustees are to be permitted to charge interest on their own and the other creditors' demands, up to the time of the sale of the property and realizing the proceeds, for the reasons mentioned under the last head, viz. that the plaintiff and the other attaching creditors, by the extraordinary course of stipulating to continue their actions in court, and not proceeding upon their attachments, for such a length of time, and contingently, upon payment of certain instalments therein specified, to give up and relinquish them altogether, must be presumed to have intended to allow a much greater latitude of indulgence to the trustees in the management and application of the funds, than would have been allowable, had they proceeded promptly in the due course of law ; and under the circumstances the rule adopted is an equitable one.

The trustee having admitted certain funds in his hands liable to the attachment, is responsible if he do not fully and clearly discharge himself, and in this respect the burden of proof is on him. In pursuance of this principle, the charge of $365·69, the expense of finishing a double speeder, is to be stricken out, unless, upon a more accurate examination of the answer, it turns out that a part of it is to be allowed. as warranted by the assignment.

Scott
v.
Ray
and Trs

So the trustee having admitted that $ 100 towards expenses, &c. were paid by the principals, Paine & Ray, that sum is to be deducted from the charge of expenses.

On the same grounds, the sum of $ 34·37, paid to Cook for services, is to be deducted, the trustee leaving it at least uncertain whether he had paid it.

We are also of opinion, that the sums received by the trustee, by way of dividend, from the estate of Paine, towards his own debt and towards the debts chargeable on the trust fund in his hands, are to be deducted, because they obviously diminish the amount thus chargeable on the fund, and leave a larger amount for which he is chargeable upon the trustee attachment.

These charges and deductions show a balance in the hands of the trustee, for which he is liable in this action, and therefore we are of opinion that the trustee must be charged.

For the reasons already stated, we have not thought it necessary to attempt ascertaining the amount for which the trustee may be chargeable ; and any opinion which we might express upon that subject, in this stage, would be premature.

It will no doubt be necessary that an account be stated upon the principles here expressed, that there should be a more rigid scrutiny of the facts, and a more exact computation of interest. This may be probably done by an auditor, if the parties shall so agree, either in the present stage of the cause or upon a *scire facias.*

*Trustee charged on his answers.*